# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD E. PIERSON CONSTRUCTION CO., INC., <br>                 Plaintiff, <br><br> v. <br><br> PHILADELPHIA REGIONAL PORT AUTHORITY, <br>                 Defendant. | CIVIL ACTION <br><br><br> NO. 18-4280 |

DuBois, J.                                                                                                November 9, 2018

## M E M O R A N D U M

## I. INTRODUCTION

This case arises out of the cancellation of a construction contract awarded to plaintiff, Richard E. Pierson Construction Co., Inc., ("Pierson") by defendant, Philadelphia Regional Port Authority ("PhilaPort"). After Pierson was awarded the contract, the second-lowest bidder, South State, Inc., protested the award on the ground that Pierson did not meet the contract bidding requirements, and started suit in the Commonwealth Court. The Commonwealth Court issued a temporary stay enjoining work on the contract. Thereafter, PhilaPort sent a letter to Pierson cancelling the contract and stating it would reopen bidding. As a consequence, South State filed a praecipe to discontinue its appeal with the Commonwealth Court, and the Commonwealth Court issued a notice of discontinuance.

Pierson filed the instant action, seeking an injunction prohibiting PhilaPort from cancelling and rebidding the contract and a declaratory judgment (1) that Pierson was the lowest responsible bidder on the contract, (2) that the contract was valid and binding and thus that Pierson can begin work on the project at any time, and (3) that PhilaPort's letter cancelling the contract is null and void. Pending before the Court are Pierson's Motion for Preliminary

Injunction and proposed intervenor-defendant South State, Inc.'s Motion to Intervene. For the reasons set forth below, the Court concludes that PhilaPort enjoys sovereign immunity and dismisses the case, *sua sponte*, for lack of subject-matter jurisdiction.

## II.    BACKGROUND

In May 2018, defendant, PhilaPort, submitted a request for bids on a public contract to perform construction work on Packer Avenue Marine Terminal Berths 1 to 3. Plt. Mem. in Supp. Mot. Prelim. Inj. 3. The project bidding requirements included, inter alia, a condition that the contractor certify that it is participating "in an approved Apprenticeship Program" registered with the Pennsylvania Apprenticeship and Training Council. *Id.* at 4. Plaintiff Pierson, proposed intervenor-defendant South State, and other contractors submitted written bids on the contract. On bid day, PhilaPort selected Pierson as the "lowest responsive and responsible bidder" and awarded Pierson the contract. *Id.* at 4. South State was the second lowest bidder. *Id.*

South State filed a formal protest with PhilaPort, seeking to disqualify Pierson's bid on the grounds that it failed to meet the bidding requirements. *Id.* Specifically, South State alleged that Pierson was not engaged in an "approved Apprenticeship Program" and that Pierson falsely certified that, as of bid day, it participated in an "Apprenticeship Program" registered with the Pennsylvania Apprenticeship and Training Council. *Id.*

PhilaPort's Chief Executive Officer and Executive Director denied South State's protest and upheld Pierson's contract with PhilaPort. *Id.* at 5. The contract became fully executed on August 28, 2018, after representatives from Pierson, PhilaPort, the Pennsylvania Office of Attorney General, and the Office of the Budget of the Commonwealth of Pennsylvania signed the contract. *Id.* at 5–6.

Meanwhile, on August 20, 2018, South State filed a Petition for Review with the Pennsylvania Commonwealth Court, appealing PhilaPort's decision. *Id.* at 6. The following day, South State filed an application for a stay of work on the contract pending the Commonwealth Court's determination and a request to expedite the court's review. *Id.* at 6–7. On September 21, 2018, the Commonwealth Court concluded South State had shown a likelihood of success on the merits and granted South State's application for a stay and request to expedite review. *See id.* at 7. As a result, that day, PhilaPort sent a letter to Pierson cancelling the contract and stating that the project would be rebid. *Id.* at 8. Because PhilaPort cancelled the contract, South State filed a praecipe to discontinue the appeal to the Commonwealth Court, and the Commonwealth Court issued a notice of discontinuance of the appeal. *Id.* at 8. Shortly thereafter, Pierson filed an emergency petition to intervene and to stay and/or enjoin the contract's termination and award to a new bidder. *Id.* at 8. The Commonwealth Court denied Pierson's petition. Def.'s Resp. Mot. Prelim. Inj. 6.

Pierson filed a Complaint (Document No. 1, filed October 3, 2018) in this Court, seeking injunctive and declaratory relief, and a Motion for Preliminary Injunction (Document No. 3, filed October 4, 2018). Thereafter, South State filed a Motion to Intervene as a defendant (Document No. 8, filed October 17, 2018) and a response to Pierson's Motion for Preliminary Injunction (Document No. 12, filed October 18, 2018). PhilaPort also filed a response (Document No. 14, October 19, 2018). Pierson filed a reply in support of its Motion for Preliminary Injunction (Document No. 17, filed October 24, 2018), specifically focused on the issues of sovereign immunity and jurisdiction. On October 26, 2018, the Court conducted a telephone conference to discuss these issues. Following the conference, Pierson filed an additional reply in support of its

Motion for Preliminary Injunction (Document No. 21, filed October 31, 2018). The Court now raises the issue of its subject-matter jurisdiction over this case *sua sponte*.

## III. LEGAL STANDARD

A federal court must have subject-matter jurisdiction in order to hear a case. Federal courts "have an ever-present obligation to satisfy themselves of their subject matter jurisdiction" and may raise the issue *sua sponte*. *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995); *see United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (explaining "a claim of sovereign immunity advances a jurisdictional bar . . . which the court may raise *sua sponte*"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## IV. DISCUSSION

The Eleventh Amendment to the United States Constitution states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Eleventh Amendment sovereign immunity bars suits brought against state agencies and other state entities in federal court "even though the state itself has not been named as a defendant." *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005). If a federal court determines the defendant enjoys sovereign immunity, the court lacks subject-matter jurisdiction over the case. *See Bein*, 214 F.3d at 412.

In the Third Circuit, courts must examine three factors to determine whether an entity is an arm of the Commonwealth entitled to Eleventh Amendment sovereign immunity: "(1) [w]hether the money that would pay the judgment would come from the state," (2) "[t]he status of the agency under state law" and (3) "[w]hat degree of autonomy the agency has."

4

*Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).

Before 2005, the Third Circuit had ruled that the first factor was the weightiest. *See id.* ("Although no single . . . factor is dispositive, the most important is whether any judgment would be paid from the state treasury."). Under this framework, two courts in the Eastern District of Pennsylvania concluded that defendant presently before this Court, PhilaPort, did not enjoy sovereign immunity. *See Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 819 (E.D. Pa. 1998); *Bass v. Consol. Rail Corp.*, No. 93-875, 1994 WL 25380, at *2 (E.D. Pa. Jan. 31, 1994). Both courts decided that although the second and third factors weighed slightly in favor of sovereign immunity, the first factor, which was most important, disfavored sovereign immunity. *Holt*, 20 F. Supp. 2d at 819–20; *Bass*, 1994 WL 25380, at *2.

In 2005, however, the Third Circuit ruled that the first *Fitchik* factor should not be considered most important. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Instead, the Third Circuit explained the three factors were "co-equal" and should be balanced together. *Id.*; *Karns v. Shanahan*, 879 F.3d 504, 513–14 (3d Cir. 2018). Under this new framework, courts "should not simply engage in a formulaic or mechanical counting up of the factors"; instead, "each case must be considered on its own terms, with courts determining and then weighing the qualitative strength of each individual factor in the unique factual circumstances at issue." *Karns*, 879 F.3d at 514. Since this shift in the analytical framework surrounding sovereign immunity, the only court in this District to be faced with this question concluded PhilaPort enjoys sovereign immunity. *See United States ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 334 (E.D. Pa. 2012).

The Court addresses each of the *Fitchik* factors in turn.

## A. First *Fitchik* Factor – Liability of the State for a Judgment

Evaluating the first factor, whether money that would pay the judgment would come from the state, a court should consider (1) "whether payment will come from the state's treasury," (2) "whether the agency has the money to satisfy the judgment," and (3) "whether the sovereign has immunized itself from responsibility for the agency's debts." *Fitchik*, 873 F.2d at 659. The crux of this factor is "not whether the state will be the principal source of any funding, but rather whether the state is legally responsible for the payment of the judgment." *Karns*, 879 F.3d at 515 (internal citation omitted).

The Commonwealth has statutorily disclaimed its legal obligation for PhilaPort's debts:

> The authority shall have no power, at any time or in any manner, to pledge the credit or taxing power of the Commonwealth or any political subdivision. . . . No obligations of the authority shall be deemed to be obligations of the Commonwealth or of any of its political subdivisions. . . . The Commonwealth or any political subdivision thereof shall not be liable for the payment of principal or interest on obligations of the authority, excluding payments for lease agreements regarding the property of the authority.

55 Pa. Cons. Stat. §§ 697.6(c)(1), (3), (4). This sort of liability disclaimer is exactly what the Third Circuit emphasizes is the root of the first factor. *See Karns*, 879 F.3d at 515.

On the other hand, approximately 76% of PhilaPort's budget comes from Commonwealth funding, although the Commonwealth is not obligated to provide this support. *Budike*, 897 F. Supp. 2d at 329, 330–31. The Commonwealth also exercises some control over PhilaPort's budget: a comptroller provides oversight of the funds, the Commonwealth's Attorney General must "approve all contracts for form and legality," and PhilaPort cannot secure loans without the Commonwealth's approval. *See id.* at 330.

Defendant concedes this factor disfavors a finding of sovereign immunity. Def. Resp. Prelim. Inj. 11–12. Addressing this factor, the *Bass* and *Holt* courts found this factor weighed "heavily" against immunity, but the more recent *Budike* court concluded that given the

6

Commonwealth's power over PhilaPort's budget, the first factor merely "weighs against," but "does not weigh *substantially*" against, a finding of sovereign immunity. *Budike*, 897 F. Supp. 2d at 331 n.40 ("[T]he fact that the Commonwealth contributed 76.2 percent of [PhilaPort's] funding, a substantial proportion, mitigates, to a certain extent, the fact that the Commonwealth is not obligated to pay for [PhilaPort's] liabilities and debts."); *Holt*, 20 F. Supp. 2d at 820; *Bass*, 1994 WL 25380, at *2.

The Court concludes this factor weighs against sovereign immunity.

**B.**     **Second *Fitchik* Factor – Defendant's Status Under State Law**

Considerations relevant to the second factor—defendant's status under state law— include "[1] how state law treats the agency generally, [2] whether the entity is separately incorporated, [3] whether the agency can sue or be sued in its own right, . . . [4] whether it is immune from state taxation," "[5] the entity's authority to exercise the power of eminent domain, [6] application of state administrative procedure and civil service laws to the entity, [7] the entity's ability to enter contracts and make purchase on its own behalf, and [8] whether the entity owns its own real estate." *See Fitchik*, 873 F.2d at 659; *Maliandi*, 845 F.3d at 91.

Several Pennsylvania laws treat PhilaPort as an arm of the Commonwealth. The Commonwealth characterizes PhilaPort as an "instrumentality of the Commonwealth" able to "exercise the powers of the Commonwealth as an agency of the Commonwealth." 55 Pa. Cons. Stat. § 697.4. A state statute also explicitly asserts the Commonwealth General Assembly's intent that PhilaPort "shall enjoy sovereign and official immunity," subject to certain exceptions. *Id.* § 697.18. PhilaPort is expressly exempt from taxes. *Id.* § 697.14. Finally, the Commonwealth empowers PhilaPort to determine zoning and exercise the power of eminent domain. *Id.* §§ 697.6(18), 697.21.

7

On the other hand, disfavoring a finding of immunity, PhilaPort can sue and be sued. *See id.* § 697.6(b)(2). PhilaPort can also enter into contracts and make purchases on its own behalf. *Id.* §§ 697.6(b)(7), (8), (12), (16).

All three district courts that have addressed PhilaPort's sovereign immunity concluded that the second factor weighs "slightly" in favor of sovereign immunity. *See Budike*, 897 F. Supp. 2d at 333; *Holt*, 20 F. Supp. 2d at 819; *Bass*, 1994 WL 25380, at *2. Each court relied on the Third Circuit assessment of this factor with respect to Southeastern Pennsylvania Transportation Authority ("SEPTA"), which presented a fact pattern nearly identical to that of PhilaPort. Under this factual framework, the Third Circuit concluded on two separate occasions that the second factor "weigh[ed] slightly in favor of a finding of sovereign immunity" for SEPTA. *See Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296, 308 (3d Cir. 2008); *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 820 (3d Cir. 1991).

Following the Third Circuit's precedent in *Cooper* and *Bolden*, the Court concludes that this factor weighs slightly in favor of sovereign immunity.

### C. Third *Fitchik* Factor – Defendant's Autonomy

The final factor for the Court to consider is what degree of autonomy defendant possesses. Several statutes demonstrate PhilaPort is not entirely autonomous, thus favoring a finding of sovereign immunity. All members of PhilaPort's governing body are appointed by state officials. 55 Pa. Cons. Stat. § 697.5; *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 548–49 (3d Cir. 2007) (holding the Governor's appointment of a state university's entire governing board demonstrated a lack of autonomy favoring immunity). The Governor appoints PhilaPort's comptroller, approves PhilaPort's budget, and approves the taking of any debt PhilaPort assumes. *See Budike*, 897 F. Supp. 2d at 334; 55 Pa. Cons. Stat. §§ 697.6(c)(2),

(6); Def. Resp. 14. PhilaPort must file an annual report and financial statement with the Department of Commerce at the end of each fiscal year and is subject to audits by the Commonwealth at any time. *See* 55 Pa. Cons. Stat. § 697.10; *Karns*, 879 F.3d at 518 (noting this fact favors immunity). The Commonwealth Procurement Code governs expenditure of all Commonwealth agency funds, including PhilaPort's. *See Budike*, 897 F. Supp. 2d. at 334; *see also* Def. Resp. 14. Finally, PhilaPort is bound by the Public Official and Employee Ethics Law. *See* 55 Pa. Cons. Stat. § 697.15(b); *see also* Def. Resp. 14. Conversely, PhilaPort's actions are not subject to gubernatorial veto. *See Bass*, 1994 WL 25380, at *3.

Comparing these facts to those relevant to New Jersey Transit and SEPTA in Third Circuit precedent, all three courts to address PhilaPort's sovereign immunity concluded that the third factor slightly favors a finding of immunity. *See Budike*, 897 F. Supp. 2d at 334; *Holt*, 20 F. Supp. 2d at 820; *Bass*, 1994 WL 25380, at *2–3; *see also Karns*, 879 F.3d at 518 (concluding the third factor "weighs in favor of immunity" where the facts were similar to PhilaPort's but New Jersey Transit was subject to gubernatorial veto). Considering these decisions, the Court concludes this factor weighs slightly in favor of sovereign immunity.

### D. Balancing the *Fitchik* Factors

The Court has concluded that the first factor disfavors sovereign immunity and the second and third factors slightly favor immunity. "[W]eighing the qualitative strength of each individual factor in the unique factual circumstances at issue," the Court agrees with *Budike* and concludes that the *Fitchik* factors favor sovereign immunity. *See Karns*, 879 F.3d at 519.

Plaintiff argues the *Budike* court misinterpreted the analytical framework the Third Circuit articulated in *Benn* and that the factors must be weighed rather than simply counted. Plt. Reply Supp. Mot. Prelim. Inj. Issues Immunity & Jurisdiction 3. According to plaintiff, because

9

the first factor weighs *strongly* against sovereign immunity and the second and third factors weigh only *slightly* in favor of sovereign immunity, the factors, when balanced, still weigh against sovereign immunity. *Id.* at 5.

Plaintiff mischaracterizes *Budike*, which engaged in the very qualitative weighing that plaintiff seeks and the Third Circuit mandates in *Karns*. The *Budike* court explained, "Since the three factors hold equal weight, and since the first factor does not weigh *substantially* against such a finding, we are compelled to conclude that [PhilaPort] is an arm of the Commonwealth" and thus enjoys sovereign immunity. 897 F. Supp. 2d at 89 (emphasis in original). Plaintiff fails to cite, and this Court is not aware of, any cases decided after the Third Circuit's "co-equal" holding in *Benn* in which the court concluded that one factor so strongly favored or disfavored sovereign immunity that it outweighed the other two factors.

For this Court to conclude that PhilaPort does not enjoy sovereign immunity would be to ignore *Benn* and conclude that the evidence supporting the first factor—the disclaimer of PhilaPort's debts by the Commonwealth—by itself is determinative. The Court rejects that reading of Third Circuit precedent. Although this conclusion may result in "limited and unsatisfying avenues to obtain relief" for plaintiff, state sovereignty is a "constitutional precept[] and lynchpin[] of our federalist system of government." *See Maliandi v. Montclair St. Univ.*, 845 F.3d 77, 99 (3d Cir. 2016). Defendant PhilaPort enjoys sovereign immunity under the Eleventh Amendment, and the Court thus lacks subject-matter jurisdiction over the case.

## V. CONCLUSION

For the foregoing reasons, the Court, *sua sponte*, dismisses plaintiff's Complaint with prejudice for lack of subject-matter jurisdiction. The Court thus dismisses Plaintiff's Motion for Preliminary Injunction (Document No. 3, filed October 4, 2018) and Motion of South State, Inc.

to Intervene as Defendant and Memorandum in Support (Document No. 8, filed October 17, 2018) for lack of subject-matter jurisdiction.  An appropriate Order follows.